IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH V. DiFELICE, JR., <br><br> Plaintiff, <br><br> v. <br><br> AETNA/U.S. HEALTHCARE, et al. <br><br> Defendants. | CIVIL ACTION NO. 02-3641 |

**ORDER**

AND NOW, this ____ day of _____, 2004, upon consideration of Defendant, Aetna/U.S. Healthcare's Motion to Dismiss and Plaintiff's response, it is ordered that the remaining claim against Aetna is dismissed with prejudice.

BY THE COURT:

BY:_____
**Judge John P. Fullam, Sr.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH V. DiFELICE, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AETNA/U.S. HEALTHCARE, et al.<br><br>Defendants. | CIVIL ACTION NO. 02-3641 |

**AETNA/U.S. HEALTHCARE'S MOTION
TO DISMISS PLAINTIFF'S REMAINING CLAIM AGAINST
AETNA AS PREEMPTED BY ERISA**

Aetna/U.S. Healthcare Inc. moves to dismiss, under Fed. R. Civ. P. 12(b)(6), the

remaining claim asserted against Aetna in Count I of the Complaint. The grounds for this

Motion are set forth in the Supporting Brief, and incorporated here.

Dated: August 31, 2004

                                          Respectfully submitted:
                                          **Post & Schell, P.C.**


                                      By:    Jonathan B. Sprague, Esq.
                                                          Attorney I.D. #36802
                                                          Amalia V. Romanowicz, Esq.
                                                          Attorney I.D. #65412
                                                          Four Penn Center
                                                          1600 John F. Kennedy Boulevard
                                                          Philadelphia, PA  19103
                                                          (215) 587-1155

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH V. DiFELICE, JR., <br><br> Plaintiff, <br><br> v. <br><br> AETNA/U.S. HEALTHCARE, et al. <br><br> Defendants. | CIVIL ACTION NO. 02-3641 |

**AETNA/U.S. HEALTHCARE'S BRIEF IN SUPPORT OF MOTION
TO DISMISS PLAINTIFF'S REMAINING CLAIM AGAINST
AETNA AS PREEMPTED BY ERISA**

**I.
INTRODUCTION**

Following remand from the Court of Appeals for the Third Circuit, Aetna/U.S. Healthcare, Inc. ("Aetna") moves to dismiss the sole remaining claim against Aetna in Plaintiff Joseph V. DiFelice's ("Plaintiff's") Complaint – concerning Aetna's alleged negligent refusal to cover a hospital stay at Chester County Hospital – on two grounds:

- *First*, under the intervening Supreme Court decision in *Aetna Health Inc. v. Davila*, coverage decisions by an HMO regarding a plan member's hospital stay (or discharge) plainly concern administration of plan benefits, not medical treatment, and therefore are preempted under Section 502 of ERISA; and

- *Second*, in the alternative, this Court should exercise supplemental jurisdiction and dismiss Plaintiff's remaining claim under Section 514 of ERISA, because the claim clearly "relate[s] to" Plaintiff's ERISA-governed benefits plan.

**A.   PROCEDURAL BACKGROUND**

Plaintiff's Complaint alleges negligence by Plaintiff's treating physicians, a physician group, a hospital, and Aetna, arising out of the treatment of Plaintiff's sleep apnea and related health conditions. Plaintiff alleges that, during the course of approximately eight months in 2001, several of the physician-defendants rendered negligent medical treatment to Plaintiff, resulting in medical complications. *Id*. ¶¶ 7-27. There are no allegations that Aetna rendered medical treatment to Plaintiff; rather, the Complaint alleges that Aetna is an "insurance company" that "provided health care coverage to [Plaintiff]" during the period that the physicians rendered treatment to Plaintiff. *Id*. ¶ 29. Count I of the Complaint further alleges that Aetna "interfere[d]" with the plaintiff's medical treatment by refusing to cover a "specialized tube" in September 2001. *Id*. Plaintiff also alleges in Count I that Aetna "insist[ed]" on the plaintiff's discharge from Chester County Hospital in November 2001 "before his attending physician was planning on discharging [him]." *Id*.

Aetna removed the case from Pennsylvania state court to this Court on June 7, 2002, on the ground that Plaintiff's claims against Aetna were subject to "complete preemption" under Section 502 of ERISA, 29 U.S.C. § 1132(a). Complete preemption provides a basis for removal jurisdiction where a state law claim is within the scope of the civil enforcement mechanism set forth in Section 502. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987). On July 8, 2002, following removal, Aetna filed a motion to dismiss the plaintiff's claims against Aetna in this Court, on the ground that the claims "relate to" ERISA-governed employee welfare benefit plans and are therefore subject to

2

"conflict preemption" under Section 514 of ERISA, 29 U.S.C. § 1144(a).[1]  On July 30, 2002, this Court granted Aetna's motion to dismiss and denied Plaintiff's motion to remand this case to Pennsylvania state court.  *See* District Court Memorandum and Order; Order Denying Remand.

Plaintiff appealed this Court's Dismissal Order to the United States Court of Appeals for the Third Circuit, and on October 15, 2003 the Court of Appeals affirmed in part and reversed in part this Court's Order.  *DiFelice v. Aetna U.S. Healthcare,* 346 F.3d 442 (2003).  The Court of Appeals affirmed this Court's dismissal of Plaintiff's claim challenging Aetna's alleged interference with medical treatment for sleep apnea through a refusal to cover the "specialized tracheotomy tube," on the ground of complete preemption under Section 502 of ERISA, 29 U.S.C. § 1132(a).  *Id*. at 452.  The Court of Appeals reversed this Court's dismissal of Plaintiff's negligence claim challenging Aetna's alleged "insistence" to discharge Plaintiff from Chester County Hospital under Section 502.  *Id*.  In reversing this aspect of this Court's dismissal order, the Court of Appeals speculated that the plaintiff's vague allegation of "insistence" by Aetna on discharge from the hospital could mean that Aetna "unduly affected [the plaintiff's] physician's judgment," and such an allegation could conceivably support a state law negligence claim outside of Section 502's preemptive reach.  *Id*.  The Court of Appeals remanded the case to this Court with an invitation to consider whether this remaining claim against Aetna is subject to conflict preemption under Section 514, 29 U.S.C. § 1144(a), which is broader in scope than Section 502 complete preemption.

---

[1]   ERISA conflict preemption stems from the express language of Section 514, which provides that ERISA "shall supersede any and all State laws insofar as they . . . relate to any employee benefit plan" covered by the statute.  29 U.S.C. § 1144(a).

3

B.     **THE SUPREME COURT'S INTERVENING DECISION IN *AETNA HEALTH INC. V. DAVILA***

After the Court of Appeals remanded the case to this Court, the Supreme Court issued its decision in *Aetna Health Inc. v. Davila*, 542 U.S. ___, 2004 U.S. LEXIS 4571 (2004). The Supreme Court in *Davila* significantly altered the analytical landscape that the Third Circuit previously used to analyze Section 502 complete preemption. Among other things, *Davila* clarified that state law claims challenging a plan-administration-related decision of the HMO – such as, in particular, claims challenging an HMO's benefits decision that results in a member's hospital discharge– are completely preempted under Section 502 of ERISA, without regard for whether the determination involved a medical judgment or affected the "quality" of medical treatment. Indeed, the *Davila* companion case, *Cigna Healthcare of Texas, Inc. v. Calad*, No. 03-83, involved facts strikingly similar to the facts alleged in Plaintiff's claim against Aetna concerning the hospital discharge, which is the only remaining claim against Aetna.

## II.
## ARGUMENT

A.     **THE SUPREME COURT'S INTERVENING DECISION IN *DAVILA* CLARIFIES THE SCOPE OF SECTION 502 PREEMPTION AND REQUIRES DISMISSAL OF PLAINTIFF'S REMAINING CLAIM AGAINST AETNA**

The Supreme Court's recent decision in *Davila* approves much of the Court of Appeals' ruling in the present case, including the Court of Appeals' affirmation of this Court's dismissal of the claim challenging Aetna's refusal to cover a "specialized tracheotomy tube" on the ground of Section 502 preemption. *Davila* undermines, however, the Court of Appeals' reversal of this Court's decision to dismiss the hospital

4

discharge claim. Because *Davila* is binding and intervening authority, Plaintiff's remaining claim against Aetna must be dismissed.

In reversing this Court's Order dismissing the hospital discharge claim, the Court of Appeals struggled to apply the Third Circuit's pre-*Davila* analytical framework, which largely turned on whether the challenged HMO decision on hospital discharge was a "treatment" (not preempted) or "administrative"/"eligibility" (preempted) determination. *DiFelice*, 346 F.3d at 448. The Court of Appeals observed that "it is difficult to tell from DiFelice's vague pleadings what precisely he is alleging that Aetna did or the form this 'insistence' took." *DiFelice*, 346 F.3d at 452. The Court of Appeals ultimately speculated that some form of "insistence" by Aetna could have "unduly affected his physician's judgment." *Id*.[2] If this were the case, the Court of Appeals found that Aetna's decision would have amounted to a treatment decision by the HMO under the pre-*Davila* analysis. *Id*. Thus, on the pleadings, the Court of Appeals permitted the claim to proceed.

---

[2] The Court of Appeals cited two Third Circuit cases as examples of HMO decisions or policies that unduly affected a physician's judgment, *In re: U.S. Healthcare, Inc.*, 193 F.3d 151 (3rd Cir. 1999) and *Lazorko v. Pennsylvania Hospital*, 237 F.3d 242 (3rd Cir. 2000). Because these cases rely on the pre-*Davila* distinction between "treatment" decisions and "eligibility"/"administrative" decisions, these decisions constitute questionable authorities in light of the holding and analysis in *Davila*. Moreover, these decisions are clearly distinguishable from the present case, which does not involve allegations of financial penalties or disincentives by Aetna outside of normal hospital care authorization determinations. In *U.S. Healthcare*, the plaintiffs challenged an HMO's policy of pre-certifying a twenty-four hour discharge of mother and newborn, a policy that allegedly affected the "quality" of treatment and interfered with medical judgment by imposing financial incentives on treating physicians. 193 F.3d at 163. In *Lazorko*, the plaintiffs challenged the HMO's financial disincentives on providers, which alleged influenced the plaintiff's doctor's decision to deny continued hospitalization. 237 F.3d at 242. Plaintiff has advanced no such allegations in the present case, and it is clear under *Davila* the only involvement by Aetna – including the only conceivable source for any "duty" that would support Plaintiff's negligence claim – necessarily concerned administration of Plaintiff's health benefits plan.

5

*Davila*, however, makes clear that, even though many benefits-related HMO decisions could be artfully (or inartfully) characterized as affecting medical treatment or the "quality" of care received by the member (*e.g.*, "insistence"), these determinations are still quintessentially benefits determinations. *See id.* at 17. The exception to the general rule that benefit determinations affecting treatment are subject to complete preemption under Section 502 – the so-called "staff model" or "group model" HMOs where the treating physician owns the HMO or is an employee of the HMO – is not presented here. *See Davila* at 16-19 (discussing physician-owned HMO in *Pegram v. Herdich*, 530 U.S. 211 (2000)). There is no allegation that Aetna owned or operated Chester County Hospital or that Aetna was the employer of Plaintiff's physician.

Further, *Davila* teaches that, in the absence of a staff model HMO, any alleged influence by the HMO over treatment decisions invariably results from plan benefit determinations. The respondents in *Davila*, for example, alleged that Aetna "'controlled, influenced, participated in and made decisions which affected the quality of the diagnosis, care, and treatment provided." *Id.* at 20. Despite this characterization in the pleadings, the Supreme Court recognized that the HMO's alleged influence stemmed from benefits determinations, and "[c]lassifying any entity with discretionary authority over benefits determinations as anything but a plan fiduciary would thus conflict with ERISA's statutory scheme and regulatory scheme." *Id.* at 35.

As in *Davila*, it is clear in the present case that Aetna's alleged determination concerning discharge of Plaintiff from Chester County Hospital falls within Aetna's core function of administering benefits under Plaintiff's ERISA-governed plan. Indeed,

Plaintiff's Certificate of Coverage required preauthorization of hospital benefits by Aetna and, in addition, contained the following provision:

> In the event that the Member elects to remain in the Hospital . . . after the date that the Participating Provider and/or the HMO Medical Director has determined and advised the Member that the Member no longer meets the criteria for continued inpatient confinement, the Member shall be fully responsible for direct payment to the Hospital . . . for such additional Hospital . . . services, and the HMO shall not be financially responsible for such additional services.[3]

Thus, any involvement by Aetna with Chester County Hospital was limited to plan benefits administration, and the Plan provided the only basis for any duty to Plaintiff by Aetna.

Moreover, the Supreme Court's analysis in *Davila* is particularly applicable to the present case, because there are striking similarities between the allegations advanced in *Calad* (No. 03-83), the companion case to *Davila*, and Plaintiff's allegations in the present case:

- *First*, Calad alleged that she received health care coverage through a plan administered by Cigna. *Davila* at 2. Plaintiff alleges here that Aetna "provided health care coverage" as his "insurance company." Complaint ¶ 29

- *Second*, Calad alleged that "although her treating physician recommended an extended hospital stay, a CIGNA discharge nurse determined that Calad did not meet the plan's criteria for a continued hospital stay." *Davila* at 8. Plaintiff alleges here that Aetna "insist[ed] on [Plaintiff]'s discharge from the Chester County Hospital in early November 2001, before his attending physician was planning on discharge [him]." Complaint ¶ 29

- *Third*, Calad contended that Cigna "controlled, influenced, participated in and made decisions" concerning her discharge from a hospital. *Id*. at 20. Plaintiff's allegation here is that Aetna "improperly interfer[ed] with [Plaintiff]'s medical care" and "insist[ed]" on Plaintiff's discharge from Chester County Hospital in November 2001. Complaint ¶ 29.

---

[3]  Certificate of Coverage at 17 (attached as Ex. C to Aetna's Opposition To Plaintiff's Motion To Remand (filed July 8, 2002)).

7

- *Fourth*, Calad sought to recover damages for medical complications that allegedly resulted from Cigna's influence over the discharge decision. *Davila* at 2. Plaintiff here also seeks to recover damages for medical complications that allegedly resulted from his discharge from Chester County Hospital. Complaint ¶ 27.

Indeed, Plaintiff cannot distinguish *Calad*, because there are no factual allegations – other than the allegations quoted above – that support Plaintiff's remaining claim against Aetna. Thus, the holding in *Davila*, as applied by the Supreme Court itself to the facts in *Calad*, requires dismissal of Plaintiff's remaining claim against Aetna on the ground of complete preemption under Section 502 of ERISA.

**B.    IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING CLAIM AGAINST AETNA AND DISMISS THE CLAIM AS PREEMPTED UNDER SECTION 514**

Even if the Supreme Court's decision in *Davila* did not require dismissal of Plaintiff's remaining claim under Section 502 complete preemption, dismissal still is appropriate under the broader scope of Section 514 conflict preemption, because Plaintiff's claim "relate[s] to" his ERISA-governed benefits plan. The Court of Appeals remanded Plaintiff's hospital discharge claim to this Court for a determination of whether it is appropriate to exercise supplemental jurisdiction over the claim and dismiss the claim as preempted under Section 514. *DiFelice*, 346 F.3d at 453.

**1.    This Court Should Exercise Supplemental Jurisdiction Over The Plaintiff's Remaining Claim Against Aetna**

As noted by the Court of Appeals, this Court may, in its discretion, exercise supplemental jurisdiction over the plaintiff's remaining claim under 28 U.S.C. § 1367(a). *DiFelice*, 346 F.3d at 453. Supplemental jurisdiction over a state law claim is appropriate where, as here, the state law claim forms a part of the "same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

8

The Third Circuit has interpreted this to mean that (1) "the federal claims must have substance sufficient to confer subject matter jurisdiction;" (2) "the state and federal claims must derive from a common nucleus of operative fact;" and (3) "the plaintiff's claims [must be] such that [s/]he would ordinarily be expected to try them all in one judicial proceeding." *Pryzbowski,* 245 F.3d at 275 (citation omitted). As in *Pryzbowski,* this Court's exercise of supplemental jurisdiction would serve judicial economy and consistency, because of this Court's familiarity with the facts and issues presented by Aetna's motion to dismiss.

Each of the three prerequisites for supplemental jurisdiction exists here. First, this Court has already determined (and the Court of Appeals has affirmed) that this Court had subject matter jurisdiction over the plaintiff's claim against Aetna challenging denial of coverage for the specially-designed tracheotomy tube. *See* Memorandum and Order at 1.[4]

Second, the claims are derived from the same factual predicate. The Complaint alleges a course of treatment by several physicians during an approximately eight-month period between March and November 2001. *See* Complaint ¶¶ 7-25. In addition, the Complaint seeks recovery for damages that allegedly resulted from the course of treatment as a whole, and there is no basis in the Complaint distinguishing the discharge from Chester County Hospital at the alleged "insistence" of Aetna on November 5, 2001. *Cf. Cicio v. John Does 1-8*, 321 F.3d 83, 97 (2d Cir. 2003) (affirming district court's exercise of supplemental jurisdiction over state law claims challenging denials of

---

[4] As in *Pryzbowksi,* dismissal of these claims as preempted under ERISA did not destroy this prerequisite for asserting supplemental jurisdiction over the remaining state law claims. 245 F.3d at 276.

9

coverage over the same five-month course of treatment), *vacated on other grounds,* 124 S. Ct. 2902 (2004).

Third, for similar reasons, it is clear that each of the parties would expect the claims to be tried in a single judicial proceeding. *See Pryzbowski,* 245 F.3d at 276; *Cicio*, 321 F.3d at 97. Plaintiff himself, of course, joined all the claims in a single complaint. Indeed, each of the numbered factual allegations are incorporated into each count against Aetna and the other defendants. *See, e.g.,* Complaint ¶ 28.

Aetna therefore respectfully submits that, as in *Pryzbowski*, it is appropriate for this Court to exercise supplemental jurisdiction over the plaintiff's remaining claim against Aetna, because of this Court's familiarity with the facts and issues presented by Aetna's motion. *See Pryzbowski*, 245 F.3d at 276. Indeed, Plaintiff apparently is in agreement, and he has chosen to proceed in this Court. Accordingly, judicial economy and consistency favor this Court's continued exercise of supplemental jurisdiction to undertake the Section 514 preemption analysis.

> 2. **Plaintiff's Remaining Claim Clearly "Relate[s] To" The Plaintiff's Health Benefits Plan And Is Preempted Under Section 514 Of ERISA**

In its ruling on Plaintiff's hospital discharge claim against Aetna, the Court of Appeals invited this Court to consider whether this remaining claim is subject to "conflict preemption" under Section 514 of ERISA (as opposed to "complete preemption" under Section 502*, see supra*). [5] ERISA conflict preemption stems from the express language of Section 514, which provides that ERISA "shall supersede any and all State laws

---

[5] Aetna incorporates herein by reference the points and authorities in its prior motion to dismiss, filed June 14, 2002, on the ground of express preemption under Section 514 of ERISA in this case.

10

insofar as they . . . relate to any employee benefit plan" covered by the statute. 29 U.S.C. § 1144(a). Because the plaintiff's remaining claim against Aetna clearly "relate[s] to" Plaintiff's ERISA benefit plan, it should be dismissed as preempted by Section 514. *Id.*

Conflict preemption is broader in scope than Section 502 preemption. *See*, *e.g.*, *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1492 n.8 (7th Cir. 1996) ("Complete preemption under § 502(a) is solely a jurisdictional issue, while the defense of 'conflict preemption' is much broader because § 514 is much broader than § 502(a)" (citations omitted)); *FMC Corp. v. Holliday,* 498 U.S. 52, 58 (1990) ("the preemption clause is conspicuous for its breadth"). The Supreme Court has explained that the conspicuous breadth of Section 514 preemption is consistent with the comprehensive scheme established by Congress under ERISA, which serves to promote the interests of employees and their beneficiaries by providing uniform federal regulation of the creation and administration of employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987). Accordingly, even claims that do not fall within ERISA's civil enforcement provision, Section 502, are preempted under Section 514 where they "relate to" an ERISA-governed plan.

For example, in *Jass v. Prudential Health Care Plan*, 88 F.3d 1482 (7th Cir. 1996), the plaintiff asserted a vicarious liability claim against an HMO for the allegedly negligent medical services performed by a provider that participated as a contracted provider in the HMO's network. 88 F.3d at 1484. Although the claim was not subject to Section 502 preemption (under the pre-*Davila* analytical framework), the Seventh Circuit found that the claim was subject to Section 514 conflict preemption. *Id.* The Seventh

11

Circuit reasoned that the claim "relate[d] to" the plaintiff's health benefits plan, because "[i]f an agency relationship existed between PruCare and Dr. Anderson, as Jass alleged, it was solely as a result of PruCare's health care plan of which Jass was a participant." *Id*. at 1493. In addition, the "sole basis for any relationship" among the parties – a member-plaintiff, an HMO-defendant, and a contracted provider – was the ERISA-governed plan. *Id*. at 1495. Accordingly, the plaintiff's claim clearly "relate[d] to" administration of the plan, and the claim was dismissed as preempted by ERISA. *Id*.

Similarly, in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987), a beneficiary of an ERISA plan sued the insurance company, alleging that it improperly denied his claim for long-term disability benefits. He claimed tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. 481 U.S. at 41. Even though the suits were couched in terms of common law claims, including negligence claims, as in the present case, the Supreme Court held that the suit could not proceed because it was preempted by the "expansive sweep of the pre-emption clause." *Id*. at 47-48. Further, the Section 514 preemption clause "extends to any state cause of action that has '[c]onnection or reference to' an ERISA plan." *Id*. at 48. *See also Pryzbowski*, 245 F.3d at 278 ("[S]uits against HMOs and insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514" (citations omitted)).

Plaintiff's remaining claim against Aetna, concerning Aetna's alleged "insist[ence]" on discharge from Chester County Hospital clearly "relate[s] to" the plaintiff's ERISA plan under Section 514. Complaint ¶ 29. As in *Jass*, the plan provides

12

the sole possible basis for the relations among the parties – the member-plaintiff, the defendant-HMO, and the treating physician at the hospital – concerning the Plaintiff's hospital discharge. 88 F.3d at 1493. Moreover, *Davila* confirms that hospital discharge decisions are a core benefits administration function for HMOs in administering ERISA plans. *See supra* at 5-7.

Accordingly, because Plaintiff's remaining claim against Aetna is preempted by Section 514 and because Plaintiff's Complaint does not otherwise allege a claim for which ERISA provides relief, the remaining claim against Aetna must be dismissed. *Pilot Life*, 481 U.S. at 1558.

### III.
### CONCLUSION

WHEREFORE, Aetna respectfully requests that this Court dismiss Plaintiff's remaining claim against Aetna with prejudice, because the claim concerns Aetna's administration of ERISA plan benefits and is preempted under Section 502 and, in the alternative, under Section 514 of ERISA.

Dated: August 31, 2004

                                                          Respectfully submitted:
                                                          **Post & Schell, P.C.**

                                          By:    Jonathan B. Sprague, Esq.
                                                      Attorney I.D. #36802
                                                      Amalia V. Romanowicz, Esq.
                                                      Attorney I.D. #65412
                                                      Four Penn Center
                                                      1600 John F. Kennedy Boulevard
                                                      Philadelphia, PA  19103
                                                      (215) 587-1155
                                                      Attorneys For Defendant, Aetna/U.S. Healthcare

**CERTIFICATE OF SERVICE**

I, Jonathan B. Sprague, Esquire, certify that on this date I had served upon all counsel listed below Defendant Aetna/U.S. Healthcare's Third Circuit Brief by first class mail, postage prepaid:

>James I. Devine, Esquire
>Law Offices of James I. Devine
>509 Swede Street
>Norristown, PA  19401
>(601)  292-9300
>
>(Counsel for Joseph V. DiFelice, Jr.)
>
>Michael O. Pitt, Esquire
>Kilcoyne & Associates, LLC
>Hickory Point,
>2250 Hickory Road
>Plymouth Meeting, PA  19462
>(610)  825-2833
>
>(Counsel for Michael Picariello, M.D., Sarah Fowler, M.D., Ear, Nose and Throat Associates of Chester County, Inc.).
>
>Cathy A. Wilson, Esquire
>White & Williams, LLP
>1500 Lancaster Avenue
>Paoli, PA  19301-1500
>(610)  240-4712
>
>(Counsel for Chester County Hospital)

Date:  August 31, 2004        JONATHAN B. SPRAGUE, ESQUIRE